1

2

3

4

5

6

7

8                                    **UNITED STATES DISTRICT COURT**

9                                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   SARA AHMADI,                                  )   Case No.: 1:14-cv-00264 - LJO - JLT
                                                    )
12              Plaintiffs,                         )   ORDER GRANTING DEFENDANT'S MOTION
                                                    )   TO COMPEL PLAINTIFF TO COMPLETE THE
13        v.                                        )   INDEPENDENT MEDICAL EXAMINATION
                                                    )   BY DR. ROSENBERG
14   UNITED CONTINENTAL HOLDINGS, INC.,             )
     dba UNITED AIRLINE,                            )
15                                                  )   (Doc. 44)
                Defendants.                         )
16   _____    )

17        Sara Ahmadi alleges that, while removing baggage from an overhead bin, a fellow passenger on

18   a United Airline's flight dropped luggage on her head, causing her physical and emotional injuries.

19   During the course of this litigation, Plaintiff submitted to an independent medical examination

20   performed by Dr. Rosenberg, Defendant's retained expert.  Defendant designated Dr. Rosenberg to

21   rebut the opinions of Dr. Dugger, Plaintiff's retained expert.

22        Because Plaintiff believed the scope of Dr. Rosenberg's examination exceeded the scope of that

23   performed by Dr. Dugger, she terminated the exam.  Defendant now seeks to compel Plaintiff to

24   complete the exam with Dr. Rosenberg. (Doc. 44.)  For the reasons set forth below, Defendant's

25   motion is **GRANTED**.

26   **I.      Background**

27        Plaintiff initiated this action by filing a complaint in Kern County Superior Court on June 10,

28   2014, alleging that on December 25, 2011, "United Airline permitted and caused a passenger to place a

                                                   1

1    heavy bag on an overhead compartment, and that United Airline carelessly allowed the bag to fall on

2    top of the plaintiff's head." (Doc. 1 at 8-9, ¶¶ 4-5.)  Plaintiff alleges that as "a direct and proximate

3    result" of Defendant's actions, her "pregnancy was terminated." (*Id.* at 10, ¶ 10.)  In addition, Plaintiff

4    asserts she suffered "injury to her nervous system and person, all of which injuries have caused, and

5    continue to cause, plaintiff great mental, physical, and nervous pain and suffering." (*Id.*)  Based upon

6    these facts, Plaintiff asserts the following causes of action: (1) negligence, (2) res ipsa loquitur, (3)

7    negligence per se, (4) breach of contract, and (5) beach of the implied covenant of good faith and fair

8    dealing. (*See generally* Doc. 1 at 9-16.)

9    **II.      Legal Standard**

10          Pursuant to Rule 35 of the Federal Rules of Civil Procedure, the Court may order a mental

11   examination of a party whose mental condition is "in controversy."  Specifically, Rule 35(a) provides:

12   "The court where the action is pending may order a party whose mental or physical condition—

13   including blood group—is in controversy to submit to a physical or mental examination by a suitably

14   licensed or certified examiner." *Id.*  An order for examination "may be made only on motion for good

15   cause and on notice to all parties and the person to be examined." Fed. R. Civ. P. 35(a)(2)(A).  "Mental

16   and physical examinations are only to be ordered upon a discriminating application by the district judge

17   of the limitations prescribed by the Rule. To hold otherwise would mean that such examinations could

18   be ordered routinely  . . . The plain language of Rule 35 precludes such an untoward result."

19   *Schlagenhauf v. Holder*, 379 U.S. 104, 121 (1964).

20          "Good cause" generally requires a showing of specific facts justifying the exam.  The Court is

21   to evaluate, for example, whether the information may be obtained through other means, whether the

22   plaintiff plans to prove her claim through testimony of expert witnesses, whether the result of the

23   examination would yield information that is relevant and whether plaintiff claims ongoing emotional

24   distress. *See Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D. Cal.1995) (expert testimony); *Ragge v.*

25   *MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal.1995) (ongoing emotional distress);

26   *Schlagenhauf,* 379 U.S. at 118–119 (information otherwise available).

27          Nevertheless, even where the mental condition is in controversy and good cause for the

28   examination has been shown, it is still within the Court's discretion to refuse to order an examination.

2

1    *Stinchcomb v. United States,* 132 F.R.D. 29, 30 (E.D. Pa.1990).  Although the rule is construed liberally

2    to allow the examination, the Court must balance the Plaintiff's interest in avoiding unnecessary

3    invasion of his privacy against Defendant's right to a fair trial. *Curtis v. Express, Inc.,* 868 F. Supp.

4    467, 468 (N.D.N.Y. 1994).

5    **III.     Discussion and Analysis**

6            As an initial matter, the parties do not dispute that Plaintiff's mental status is in controversy and

7    have agreed previously that Plaintiff would submit to an examination by Defendant's expert.  However,

8    the parties disagree about the allowable scope of the examination intended to evaluate her mental

9    status.  Plaintiff asserts that her retained expert, Dr. Dugger, "is a neurologist and his opinion is limited

10   to the neurological field," and offered opinions "limited only to the head injury and neurological aspect

11   of the case."  (Doc. 49 at 2.)  By contrast, Dr. Rosenberg is a "Neuropsychiatrist, board certified in

12   Neurology and Psychiatry.[1]  (Doc. 47-3 at 3)  During his examination, Dr. Rosenberg administered the

13   MMPI2 and TSI2 exams—which were not administered by Dr. Dugger. (*Id.*; Doc. 47-1 at 3, Rosenberg

14   Decl. ¶ 4.) Plaintiff argues Dr. Rosenberg's examination was improper for a rebuttal expert because he

15   administered tests that Dr. Dugger did not.  (*Id.* at 3.)

16           On the other hand, Defendant argues that the examination by Dr. Rosenberg was not improper

17   and did not exceed the scope of the exam performed by Dr. Dugger, who indicated in his report that he

18   believed Plaintiff "had suffered a traumatic brain injury, cognitive and emotional injuries."  (Doc. 47-1

19   at 3, Rosenberg Decl. ¶ 3.)  Dr. Rosenberg received this report on April 21, 2015, prior to his

20   examination of Plaintiff on April 25, 2015.  (*Id.*)  According to Dr. Rosenberg, "the MMPI2, TSI2, and

21   MMSE are standard forensic tests used to evaluate the injuries reported by Plaintiff, and opined in Dr.

22   Dugger's report."  (*Id.*, ¶ 6.)

23           Plaintiff does not dispute that the MMPI2, TSI2 are proper methods to evaluate her injuries, and

24   acknowledges Dr. Dugger administered an MMSE.  (Doc. 49 at 3.)  Her objection is based solely upon

25   the fact that Dr. Rosenberg administered different objective testing than Dr. Dugger.  At the hearing,

26   Plaintiff's counsel expressed concern that the results of the two tests may generate evidence that

27

28   ───────────────────

[1] Likewise, Dr. Dugger is "board certified in neurology and psychiatry."  (Doc. 47-2 at 3)

3

Plaintiff is malingering or being dishonest in her responses.   In this way, Plaintiff seems to take the position that because Dr. Dugger did not administer objective testing that given rise to a validity analysis, Defendant could not do so; the Court disagrees.  Indeed, if this were the case, no party would ever submit to testing that contained validity scores in order to prevent the opponent from raising this issue.  On the other hand, Plaintiff offers no authority for the proposition that a rebuttal expert is limited to the same evaluative tools.  Indeed, attacking the inadequate analytical methods used by a retained expert when forming his opinions is fully within the province of a rebuttal expert.[2]

Notably, Fed. R. Civ. P. 26(a)(2)(D)(ii) allows a rebuttal expert to express opinions "on the **same subject matter** identified by another party." (Emphasis added)  Dr. Dugger's report indicates implicitly that he intends to opine that Plaintiff suffers from depression, anxiety and post-traumatic stress disorder (Doc. 47-4 at 160) and it indicates explicitly that he will opine that these emotional conditions were caused by the event at issue. *Id.* at 16-17.  Thus, Defendant is entitled to counter these psychiatric opinions despite Plaintiff's characterization of Dr. Dugger's opinion as solely neurological. (Doc. 49 at 3)

In any event, the MMPI2 and the TSI2 <u>have already been administered</u>.  The only remaining activity, aside from scoring the tests, needed to complete the examination is the interview.  (Doc. 46 at 5-6)  The Court fails to see how refusing to complete the interview addresses what Plaintiff believes was the wrongful administration of the MMPI2 and TSI2 exams.  In any event, as detailed above, Plaintiff's position that Dr. Rosenberg must limit his opinions only to the results of tests actually performed by Dr. Dugger, is not well-taken. Thus, the Court **GRANTS** Defendant's motion to compel completion of the examination begun by Dr. Rosenberg, including the scoring of the testing data.

**IV.    Request for Sanctions**

Defendant seeks an award of monetary sanctions against Plaintiff's counsel "for failure to comply with local rules regarding making a good faith response to Defendant's substantial meet and confer efforts in connection with this motion." (Doc. 46 at 9, citing *Miranda v. Southern Pacific*

---

[2] For example, if a trial issue related to whether a particular person's blood was found at a scene and the initial expert relied only upon blood typing to support his opinion, it would be proper for the rebuttal expert to counter this opinion by relying upon DNA testing.

1 | *Transp. Co.* 710 F.2d 516, 521 (9th Cir. 1983)).  In *Miranda*, the Ninth Circuit determined that the

2 | District Court may impose "reasonably monetary sanctions against attorneys for violations of local

3 | rules when they are the offending parties."  *Id.*, 710 F.2d at 521.

4 | Here, there is no question that Plaintiff's counsel, Salim Khawaja, failed to comply with the

5 | Local Rule 251, which requires the parties to file a joint statement regarding the discovery dispute.

6 | Defendant's counsel, Jacqueline DeWarr, sent Mr. Khajawa a draft of the joint statement on May 11,

7 | 2015.  (*See* Doc. 47 at 5, DeWarr Decl. ¶ 17.)  She requested he add Plaintiff's position into the

8 | statement and return the document to her by May 22, 2015.  (*Id.*)  Ms. DeWarr followed up by leaving

9 | a telephone message for Mr. Khajawa on May 13, and sent a second courtesy copy of the draft on May

10 | 15.  (*Id.*)  Mr. Khajawa did not respond to the message or acknowledge receipt of the drafts until May

11 | 18, when Ms. DeWarr called him again.  (*Id.*)  Although Ms. DeWarr contacted Mr. Khawaja twice

12 | more on May 22 and May 27, he failed to provide her with Plaintiff's position for the joint statement,

13 | which was to be filed no later than May 29, 2015.  (*Id.* at 6, ¶¶ 17-18.) Nevertheless, though Mr.

14 | Khajawa failed to cooperate in the filing of the joint statement, the true inconvenience of this failure is

15 | placed firmly on the Court.[3]  Thus, though sanctions are justified, payment of sanctions to Defendant

16 | for this failure, are not.

17 | On the other hand, Plaintiff's persistence in taking a position in opposition this motion that is

18 | unsupported by legal authority, is a different matter.  Federal Rule of Civil Procedure 37(a)(5) provides,

19 | "If the motion is granted . . . the court must, after giving an opportunity to be heard, require the party or

20 | deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to

21 | pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the

22 | court must not order this payment if: [¶] (ii) the opposing party's nondisclosure, response, or objection

23 | was substantially justified; or (iii) other circumstances make an award of expenses unjust."

24 | When asked to explain why Plaintiff's position was substantially justified, Mr. Khawaja

25 |

26 | [3] Significantly, this is not the first time that Mr. Khawaja has failed to comply with Local Rule 251, which
27 | previously resulted in Plaintiff's motions to compel discovery being dropped from the Court's calendar.  (*See* Doc. 37.) Further failures to comply with the Local Rules will result in sanctions for that failure. *See Miranda*, 710 F.2d at 521; *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) (imposing sanctions, in part, for the plaintiff's failure to
28 | comply with the court's local rules).

1     reiterated that he disagreed that the additional testing was within the proper scope of the examination

2     for a rebuttal expert.  When pressed about how the testing did not seek to reveal information about

3     Plaintiff's psychiatric condition—about which Dr. Dugger *has* opined--counsel persisted in the

4     argument that because Dr. Dugger did not administer the MMPI2 or the TSI2, Dr. Rosenberg was

5     precluded from doing so.  If there was authority for this proposition, it is baffling that Plaintiff cited

6     none.

7           On the other hand, Plaintiff offers no explanation why her refusal to complete the interview

8     portion of the examination is an appropriate response to what she regards as the impropriety of the

9     testing already completed by Dr. Rosenberg. Seemingly, Plaintiff's refusal to complete the interview

10    was to obtain a tactical advantage by negotiating compliance with the examination in exchange for

11    Defendant's agreement to allow her to designate another expert.  However, of course, the parties may

12    not unilaterally modify the scheduling order to allow the designation of a sur-rebuttal expert or an

13    untimely expert.  (Doc. 22 at 7 ["**The dates set in this Order are considered to be firm and will not**

14    **be modified absent a showing of good cause even if the request to modify is made by**

15    **stipulation**."])  Thus, the Court finds an award of sanctions is justified.

16          Defendant seeks an award of $2,950 based upon the claim that 10 hours has been expended

17    related to this motion. (Doc. 47 at 6)  However, the support for this amount is weak.  Notably,

18    Defendant's counsel asserts that the amount of hours expended "include three and one half (4) hours

19    spent preparing the Joint Statement . . . [and] [i]t is anticipated that Defendant's counsel will spend

20    approximately four (6) hours to attend the hearing on the motion in Bakersfield, for a total of 10 hours."

21    (Doc. 47 at 6-7).  Thus, it is unclear exactly how many hours were spent by counsel so the Court will

22    award a reasonable amount.

23          Drafting the joint statement—which was a line over nine pages and included two pages of

24    "cutting and pasting" from e-mails—should not have taken more than two hours.  In addition, the

25    hearing lasted no more than 30 minutes.  Though Defendant's counsel chose to attend the hearing in

26    person, the Court sees no reason why this preference for making a personal appearance should be borne

27    by Plaintiff.  Thus, the Court will award sanctions in the amount of $737.50 for two-and-a-half hours of

28    work at the rate of $295 per hour.

**V.     Conclusion and Order**

Defendant has carried the burden of making "an affirmative showing . . . that each condition as to which the examination is sought is really and genuinely in controversy," and demonstrates good cause for the examination.  *See Shlagenhauf*, 279 at 118.

Accordingly, **IT IS HEREBY ORDERED**:

1.     Defendant's motion to compel the completion of the independent medical examination, including scoring the results of the MMPI2 and the TSI2, by Dr. Rosenberg is **GRANTED**;

2.     Plaintiff **SHALL** complete the examination by Dr. Rosenberg, including the detailed interview and mental status examination, on **June 12, 2015**; and

3.     Defendant's request for an award of monetary sanctions against Plaintiff/her counsel, Salim Khawaja, is **GRANTED IN PART** in the amount of $737.50.

IT IS SO ORDERED.

Dated:     **June 8, 2015**                              **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE