UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA AHMADI,<br><br>   Plaintiff,<br><br>   v.<br><br>UNITED CONTINENTAL HOLDINGS, Inc., dba UNITED AIRLINE, and DOES 1-50,<br><br>   Defendants. | 1:14-cv-00264 LJO JLT<br><br>MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 38) |

## I. INTRODUCTION

Plaintiff Sara Ahmadi alleges that, while removing baggage from an overhead bin, a fellow passenger on a United Airlines ("United") flight dropped luggage on her head, causing her physical and emotional injuries.

## II. FACTUAL BACKGROUND[1]

On December 25, 2011, Plaintiff was a passenger on United flights travelling between Bakersfield, CA and Boston, MA, which involved a change of planes in Denver, CO. Joint Statement of Stipulated Facts ("JSSF"), Doc. 41, No. 1. In Denver, Plaintiff boarded Flight 861 to Boston. *Id.* After Plaintiff was seated, she alleges that a passenger attempted to place a piece of luggage into an overhead bin above her head. *Id.* During the attempt, the luggage fell on Plaintiff's head, causing her injury. *Id.* Plaintiff states that that she lost consciousness. JSSF No. 2. Plaintiff did not see this happen, but felt

---

[1] Because on summary judgment the evidence of the non-moving party is assumed to be true and disputed facts are construed in the non-movants favor, the Court sets forth the undisputed facts and notes those disagreements of fact that are relevant to this decision.

1

something heavy land on her head. JSSF No. 6. Plaintiff's husband was travelling with her and stated that he saw the event. JSSF No. 8. Plaintiff's husband describes that the passenger "was trying to put his luggage where it had to go, and it just fell down from his hand on top of my wife's head." JSSF No. 9. Neither the Plaintiff nor her husband know the identity of this passenger and he currently is not a party to this action. JSSF Nos. 12 & 15. Plaintiff alleges that a flight attendant was near her when this happened and that this attendant failed to assist the passenger. JSSF No. 2.

### III. PROCEDURAL HISTORY

On December 12, 2013, Ahmadi filed a complaint against United in Kern County Superior Court alleging five causes of action: 1) negligence; 2) res ipsa loquitur negligence; 3) violation of Cal. Civ. Code § 2100, et seq./negligence per se; 4) breach of contract; and 5) breach of implied covenant of good faith and fair dealing. Doc. 1. On February 26, 2014, United removed the action to this Court on the basis of diversity jurisdiction. *Id.* On March 5, 2014, United filed a motion to dismiss Ahmadi's fourth and fifth causes of action for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 5. The Court granted the motion with leave to amend. Doc. 8. On April 18, 2014, Plaintiff filed a first amended complaint ("FAC"), Doc. 9. Defendants again moved to dismiss the breach of contract and implied covenant claims. Doc. 10. The Court granted Defendant's request without leave to amend, leaving only the tort claims. Doc. 15.

On May 5, 2015, Defendant moved for summary judgment on the remaining tort claims, on the basis that they are preempted by the Federal Aviation Act ("FAA"). United Airlines, Inc.'s Notice of Mot. for Summ. J. ("MSJ"), Doc. 38. On July 20, 2015, Plaintiff filed an opposition. Opp'n to Def.'s Mot. for Summ. J. ("Opposition"), Doc. 57. After receiving Defendant's Reply, Doc. 61, the Court vacated the hearing set for the motion pursuant to Local Rule 230(g).

### IV. STANDARD OF DECISION

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party

bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id.* When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

# V. ANALYSIS

## A. General Negligence Claims

Plaintiff claims that Defendant is negligent as follows:

> Defendants and each of them, negligently, employed, entrusted, confirmed, ratified, delegated, hired, supervised, and trained their employees, and defendants, and each of them, negligently and carelessly failed to assist passengers in loading their carry-on luggage in overhead bins, they failed to allow passengers to safely store their carry-on bags in overhead bins, and they failed to provide a safe storage location for carry-on bags. Defendants further negligently and carelessly maintained, managed, planned, controlled, allowed, promoted, operated, installed, built, designed, hired contractors, and serviced their airplane in such a manner that luggage fell on top of the plaintiff's head and caused injuries. Defendants, and each of them, are a common carrier and they knew, or in the exercise of reasonable care should have known of the dangerous condition and the unreasonable risk of harm of which the plaintiff was at all times herein mentioned was unaware. Defendants, and each of them, negligently failed to take steps to either make the condition safe or warn the plaintiff of the dangerous condition, all of which caused plaintiff injuries.

FAC ¶ 9.

The Court reads this as alleging that Defendant: 1) failed to train or supervise their employees, 2) failed to assist passengers in loading their carry-on luggage in overhead bins, 3) failed to provide a safe storage space for carry-on bags, and 4) failed to warn Plaintiffs about a dangerous condition. *Id*. Defendant argues that federal regulation pre-empts state-law based standards of care for each of these complaints and that Plaintiff does not provide evidence that shows that it did not meet federal standards. MSJ at 9. Plaintiff contends that her state law claims are not preempted and that genuine issues exist regarding Defendant's liability for her claims. Opposition at 7-14.

### 1. Legal Background on FAA Preemption

The Supremacy Clause gives Congress the power to preempt state law. U.S. Const. art. VI, cl. 2. It may do so in three ways. First, "Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision." *Arizona v. United States*, 132 S. Ct. 2492, 2500–01 (2012). Second, "[s]tates are precluded from regulating conduct in a field that Congress, acting

4

within its proper authority, has determined must be regulated by its exclusive governance." *Id.* at 2501. Finally, "state laws are preempted when they conflict with federal law." *Id.* Nothing in the FAA expressly preempts state regulation of air safety. *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007).[2] Thus, only conflict and field pre-emption are implicated in this case.

Conflict preemption exists "if there is an actual conflict between federal and state law, or where compliance with both is impossible." *Pub. Util. Dist. No. 1 of Grays Harbor Cnty. Wash. v. IDACORP Inc.*, 379 F.3d 641, 649-50 (9th Cir. 2004). It also exists "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (Internal quotations omitted).

In areas of law involving aviation safety and commerce, field preemption exists where there are pervasive federal regulations. *Gilstrap v. United Air Lines Inc.*, 709 F.3d 995, 1006 (9th Cir. 2013). In *Gilstrap*, a plaintiff with disabilities alleged that an airline did not provide the assistance that she requested for moving through an airport. *Id.* at 998. The Ninth Circuit examined FAA regulations and found that they were pervasive as to "when and where air carriers must provide such assistance." *Id.* at 1007. However, it also found that the FAA regulations said nothing about "how airlines should interact with passengers." *Id.* at 1007–08. Therefore, as to assistance in moving through the airport, the FAA regulations established the standard of care and preempted any different or higher standard of care that existed under state tort law. *Id.* However, as to the alleged hostility from the agents, the standard of care required for the plaintiff to state a claim was based on state tort law. *Id.* While *Gilstrap* specifically dealt with services to disabled persons, its analysis was conducted under the general framework for evaluating field preemption under the FAA. *Id.* at 1006 ("[B]ecause the [Air Carrier Access Act] is an amendment to the FAA and includes no indication that it should be treated independently for preemption purposes, we apply that framework here.").

---

[2] In contrast, the Airline Deregulation Act ("ADA") *does* have an express preemption clause. 49 U.S.C. § 41713 (b). Defendant, however, does not argue that Plaintiff's claims are preempted by the ADA. Thus, Plaintiff's arguments based on ADA case law, Opposition 4-7, are inapposite.

5

### 2. **Whether Material Facts Are in Dispute as to Negligence Claims**

#### a. **Physical Integrity of Overhead Bins**

Plaintiff alleges that Defendant "failed to provide a safe storage location for carry-on bags" and "negligently and carelessly maintained, managed, planned, controlled, allowed, promoted, operated, installed, built, designed, hired contractors, and serviced their airplane in such a manner that luggage fell on top of the plaintiff's head and caused injuries." FAC ¶ 9. As indicated above, the Court reads this statement as alleging that United is liable for Plaintiff's injuries because its overhead compartments were defective.

Defendant argues that federal law regulates the design of overhead bins and preempts any state tort-based standard of care. MSJ at 10-12. In support of this argument, Defendant cites to cargo bin regulations codified at 14 C.F.R. §§ 121.285 and 121.589. Subsection 589 provides that baggage must be stowed "[i]n a suitable closet or baggage or cargo stowage compartment placarded for its maximum weight and providing proper restraint for all baggage or cargo stowed within," under a passenger seat, or as cargo pursuant to section 121.285. 14 C.F.R. § 121.589(c). Subsection 285 further describes that cargo bins must, for example, be able to withstand certain load factors, be made of flame resistant material, and that "suitable safeguards" must be provided to prevent the cargo from shifting under emergency landing conditions. 14 C.F.R. § 121.285 (b)(1),(6)(7). Defendant argues that Plaintiff has failed to provide any evidence that United's overhead bins failed to meet these standards or were defective in any way. MSJ at 10-12. Plaintiff does not address these issues in her Opposition.

The Court agrees with Defendant that overhead compartment design is pervasively regulated by the federal government. The Court also agrees that Plaintiff's claim fails because she fails to provide evidence showing that the design or operation of the overhead compartment failed to meet federal standards. In fact, Plaintiff fails to provide any evidence that ties her injuries to a possible physical defect in the overhead storage compartments, regardless of the standard of care adopted. The evidence shows that a fellow passenger dropped a bag on her head; not that the bag out of defective compartment.

JSSF Nos. 1-2. Thus, the Court grants Defendant's motion for summary judgment on this issue.

### b. **Flight Attendant Assistance**

Defendant argues that there is no evidence that supports Plaintiff's claim that flight attendants negligently failed to assist the passenger who allegedly dropped his luggage on Plaintiff's head. MSJ at 11. The crux of Defendant's argument is that the only evidence Plaintiff presents is that a bag slipped from a passenger's hands and that a flight attendant was present nearby. MSJ at 14. Defendants contend that there is no evidence that the passenger asked for assistance, or that any crew member was put on notice that this passenger might be creating an unsafe situation. *Id.* Thus, they conclude that for United to be liable in this scenario would require a hyper-vigilant standard of care that would interfere with crewmembers' federally mandated duties during boarding. *Id*. In support of this argument, Defendant cites to regulations describing the number of flight attendants required on flights and requiring that they must be "evenly distributed throughout the airplane cabin, in the vicinity of the floor-level exits, to provide the most effective assistance in the event of an emergency." 14 C.F.R. §§ 121.391 & 121.394(c). An airline may reduce the number of required flight attendants by one, provided that:

> (i) The flight attendant that leaves the aircraft remains within the immediate vicinity of the door through which passengers are boarding;
> (ii) The flight attendant that leaves the aircraft only conducts safety duties related to the flight being boarded;
> (iii) The airplane engines are shut down; and
> (iv) At least one floor level exit remains open to provide for passenger egress;

14 C.F.R. § 121.394(a). Federal law also requires that a crewmember is responsible for verifying "that each article of baggage is stowed in accordance with this section and § 121.285 (c) and (d)" before the passenger entry doors of an airplane are closed in preparation for taxi and pushback. 14 C.F.R. § 121.589(a).

This Court finds that flight attendant duties are pervasively regulated by the FAA. In coming to this conclusion, the Court takes note of 14 C.F.R. § 382.111(e), which requires carriers to assist disabled passengers with stowing carry-on luggage, but only when they "self-identify as being an individual with

a disability needing the assistance." This section makes it clear that crewmembers only have a duty to assist passengers with luggage once they have been made aware that there is a need for them to intervene. *Id.* Absent that need, the primary duty of flight attendants is to space themselves about the cabin in a manner that would allow them "to provide the most effective assistance in the event of an emergency." 14 C.F.R. § 121.394(c). If this Court were to impose an affirmative duty on airline crewmembers to assist all passengers with luggage, it would conflict with this requirement.

Plaintiff contends that Defendant's Flight Attendant Operations Manual implies that Defendant may have assumed a higher standard of care. Opposition at 13. Plaintiff points out that the Manual requires that flight attendants "must proactively assist and direct customers with stowage of baggage." FAOM at 208. Plaintiff also argues that the flight attendants on the flight in question failed to comply with industry standards that require crewmembers to enforce weight standards for carry-on luggage. Opposition at 16-17. In support, Plaintiff points to an expert's testimony that opines that airlines must enact baggage policies that ensure that weight limits are not exceeded. Decl. of Barbara M. Dunn, Doc. 57-3, Ex. 5, ¶ 24.[3] Plaintiff also points to the deposition testimony of flight attendants on the flight in question. Opposition at 16-17. One of these flight attendants testified that he didn't know the maximum weight or size of carry-on baggage. Dep. of Shawn Faulkner ("Faulkner Depo"), Doc. 57-3, Ex. 3, 9, 12. The other testified that, though she documented the incident, she did not know the dimensions of the luggage or the identity of the offending passenger. Dep. of Sue Gaeta ("Gaeta Depo"), Doc. 57-3, Ex. 1, 14-15.

Plaintiff, however, has produced no legal authority supporting her position that corporate or industry-wide policies can create legally binding duties. Courts in other circuits that have considered this issue have found that private parties "should not be faced with a lawsuit for negligence by failing to live

---

[3] Defendant submitted numerous objections to aspects of Ms. Dunn's testimony. Doc. 62. The Court did not rely on most of the testimony to which Defendant objects; therefore these objections are moot. To the extent that the Court relied on testimony subject to Objection No. 12, that objection is overruled. The testimony is relevant to the issue of whether Defendant may have violated federal regulations.

8

up to a heightened, self-imposed duty of care." *Hower v. Wal-Mart Stores, Inc.*, No. CIV.A. 08-1736, 2009 WL 1688474, at *6 (E.D. Pa. June 16, 2009); *see also Hudson v. Wal-Mart Stores E., L.P.*, No. 4:06 CV00035, 2007 WL 2107466, at *3 (W.D. Va. July 20, 2007) ("Violation of company policy does not show a breach in the standard of care."). Similarly, in California negligence per se can only be established when a defendant violates "a statute, ordinance, or regulation of a public entity." Cal. Evid. Code § 669(a)(1). It cannot be predicated on a company's internal policies. *Gilberti v. United States*, No. C-90-0906 EFL, 1993 WL 187732, at *1 (N.D. Cal. May 25, 1993) ("Plaintiff could not rely on a theory of negligence per se since a failure to abide by internal USPS regulations or policies could be regarded as evidence of ordinary negligence, but could not, in applying California law under the Federal Tort Claims Act, be treated like a statutory violation giving rise to a presumption of negligence."). The Sixth Circuit Court of Appeals has found that to hold otherwise would be contrary to good public policy, because it would encourage defendants to adopt less stringent internal standards, or not to adopt internal rules at all. *Myers v. United States*, 17 F.3d 890, 900 n.12 (6th Cir. 1994). This Court finds the Sixth Circuit's reasoning persuasive. Any alleged failure of Defendant to meet voluntary standards does not create an independent basis for liability.

Plaintiff argues that in other cases considering "falling bag matters," courts have found that airlines have been held to a standard of "utmost care," which applies while passengers are boarding the plane. Opposition at 7-9. These cases were decided before *Gilstrap* and did not address conflict and field preemption. *See e.g. Andrews v. United Airlines Inc.,* 24 F.3d 39, 40 (9th Cir. 1994) (preemption argument not raised); *USAir Inc. v. U.S. Dep't of Navy*, 14 F.3d 1410, 1414 (9th Cir. 1994) (same); *Brosnahan v. W. Air Lines, Inc.*, 892 F.2d 730, 734 (8th Cir. 1989) (same); *Ducombs v. Trans World Airlines*, 937 F. Supp. 897, 902 (N.D. Cal. 1996) (only addressed express preemption by ADA); *Vinnick v. Delta Airlines, Inc.*, 93 Cal. App. 4th 859, 871 (2001) (same); *Smith v. Am. Airlines, Inc.*, No. C 09-02903 WHA, 2009 WL 3072449, at *4 (N.D. Cal. Sept. 22, 2009) (negligence claims preempted by the Montreal Convention). Moreover, not one of the cases cited by Plaintiff addresses whether flight

attendants have an affirmative duty to prevent passengers from dropping bags absent some sort of notice. *See e.g. Andrews,* 24 F.3d at 40 (crewmembers not alleged to be at fault); *USAir Inc.*, 14 F.3d at 1414 (passenger at fault for improperly stowing bag; crewmember at fault for improperly opening overhead compartment). For example, in *Brosnahan*, the Eighth Circuit found that reasonable minds could find that crewmembers were negligent where evidence showed that "the passenger was struggling with his luggage for at least thirty seconds; that the passenger's efforts made a commotion; and that if a flight attendant had observed the passenger struggling with his bag, he or she would have rendered assistance." 892 F.2d at 734. In contrast to the facts in *Brosnahan,* Plaintiff here has not pointed to any evidence that crewmembers on her flight were on notice that the passenger might need help.

Here, Plaintiff has not shown that the passenger who dropped the baggage self-identified as disabled. Nor has she alleged there was any other reason that crewmembers should have been on notice that this passenger required assistance. Thus, Plaintiff has not shown that crewmembers on the flight in question had a duty to intervene under federal law. Defendant is entitled to summary judgment on this issue.

### c. **Failure to Warn**

Plaintiff alleges that Defendant failed to "warn the plaintiff of the dangerous condition . . .which caused plaintiff injuries." FAC ¶ 9. As Defendant observes, the Ninth Circuit has specifically found that airlines cannot be liable for failure to warn about conditions, unless those warnings are mandated by federal law. *Montalvo,* 508 F.3d at 473.

> If the FAA did not impliedly preempt state requirements for passenger warnings, each state would be free to require any announcement it wished on all planes arriving in, or departing from, its soil, or to impose liability for the violation of any jury's determination that a standard the jury deems reasonable has been violated. Such a patchwork of state laws in this airspace ... would create a crazyquilt effect.

*Id.* (internal quotations omitted).

Plaintiff did not address this issue in her Opposition and has not pointed to evidence that shows

that Defendant failed to comply with federal safety warning regulations. Defendant is entitled to summary judgment on this issue.

### d. Failure to Train

Plaintiff argues that there is a triable issue of fact regarding United's failure to train its employees how to supervise the boarding process. Opposition at 18-20. As discussed above, Plaintiff points to the deposition testimony of flight attendants on the flight in question as evidence that they were unaware of baggage weight limitations or of the mass of the luggage in question. Faulkner Depo at 9, 12; Gaeta Depo. at 14-15. As Defendant points out, however, there is no evidence that the luggage in question exceeded weight or size requirements. Reply at 6-7. Thus, none of the testimony Plaintiff cites supports her theory that the conduct of United's crewmembers caused Plaintiff's injuries. Therefore, there is no evidence that supports her allegation that Defendant's failure to train makes it liable for Plaintiff's injuries.

Moreover, the FAA Administrator has enacted a broad range of federal regulations governing the training, certification, and supervision of flight attendants. For example, 14 C.F.R. § 121.401(a)(1) provides that each airline "[e]stablish and implement a training program that satisfies the requirements of this subpart and appendices E and F of this part and that ensures that each crewmember, aircraft dispatcher, flight instructor and check airman is adequately trained to perform his or her assigned duties." The FAA regulates the required subject matter and minimum training hours for flight attendants and requires that flight attendant training "consist of . . . programmable hours of instruction in . . . § 121.415(a)." 14 C.F.R. § 121.421. Subsection 121.415(a) requires training in the "duties and responsibilities of crewmembers," applicable provisions of the Federal Aviation Regulations, "appropriate portions of the certificate holder's operating manual," "emergency training as specified in §§ 121.417 and 121.805," and "roles and responsibilities in the certificate holder's passenger recovery plan." Subsection 417, in turn, proscribes mandatory training for emergencies, emergency equipment, and testing. Title 14 C.F.R. § 121.434(e) requires five hours of supervision by flight attendants on

aircraft after completion of training. Similar regulations governing the training, certification, and supervision of employees in managerial positions. 14 C.F.R. § 119.67. Accordingly, the FAA has pervasively regulated the field of training, certifying, and supervising common carrier employees, and the standard of care in Plaintiff's negligence claim based upon training, certification, and supervision is preempted. Plaintiff does not point to any evidence that Defendant failed to train its employees according to federal regulations. Thus, Defendant is entitled to summary judgment on this issue.

### B.      Res Ipsa Loquitar Claim

Defendant argues that Plaintiff's second cause of action, captioned as a claim for "Res Ipsa Loquitur" ("RIL") does not allege a viable theory for recovery given the facts alleged here. MSJ at 17. Plaintiff argues that this theory applies because there is "an inference of negligence" that arises "on proof that an airline passenger was injured as the result of the aircraft's operations." Opposition at 21.

"Res ipsa loquitur is a form of circumstantial evidence that permits an inference of negligence to be drawn from a set of proven facts." *Ashland v. Ling-Temco-Vought, Inc.*, 711 F.2d 1431, 1437 (9th Cir. 1983). The elements needed to invoke RIL are:

> 1) an injury-producing event of the kind that ordinarily does not occur without negligence,
> 2) the defendant's exclusive control of the instrument causing the injury, and
> 3) lack of contributory negligence by the plaintiff.

*King Crab, Inc. v. Seattle Refrigeration, Inc.*, 81 F.3d 168 (9th Cir. 1996).

While it is a "question of law whether *res ipsa* may apply to a given set of facts," "[w]hether or not the facts necessary to establish the elements of the doctrine are present, on the other hand, is a question of fact." *Ashland,* 711 F.2d at 1437-1438. Thus, on summary judgment, Defendant can prevail if it can show that there is a lack of evidentiary support for any of the RIL elements. *Soremekun*, 509 F.3d at 984 (9th Cir. 2007). Defendant here argues that the evidence in the record shows that the facts cannot support a finding that the event in question was caused "by an agency or instrumentality within the exclusive control of the defendant." *Ashland*, 711 F.2d at 1437. In support of this argument,

Defendant points to the undisputed fact that a passenger, not a United employee, allegedly dropped the bag on Plaintiff's head. JSSF No. 3. Plaintiff argues that United had "exclusive control" of the airplane. Opposition at 21. This is beside the point. In order for Plaintiff to prevail on this issue she would have to provide some evidence that would show that United had exclusive control *of the luggage itself*. Because she has not done so, Defendant is entitled to summary judgment on this issue.

**C.      State Code Claim**

Plaintiff's third cause of action alleges that Defendant is liable under the doctrine of negligence per se because it violated "common carrier statutes including but not limited to California Civil Code section 2100 . . . ." FAC ¶ 22. Under this doctrine "violation of a statute gives rise to a presumption of negligence in the absence of justification or excuse, provided that the person suffering the injury was one of the class of persons for whose protection the statute was adopted." *Ramirez v. Nelson*, 44 Cal. 4th 908, 918 (2008) (internal quotations omitted).

The code in question states that that "[a] carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." Cal. Civ. Code § 2100.

Defendant argues that that the *Gilstrap* Court has found that the FAA totally preempts this statute. MSJ at 20. Plaintiff argues that the holding in *Gilstrap* is limited to claims brought under the Americans with Disabilities Act. Opposition at 20. Neither of these positions is accurate. As discussed above, while *Gilstrap* specifically dealt with services to disabled persons, its analysis was conducted under the general framework for evaluating field preemption under the FAA. 709 F.3d at 1006. Thus, Plaintiff's assertion that *Gilstrap* is limited to disability claims is incorrect. Also untenable is Defendant's argument that "*Gilstrap* has expressly held that California Civil Code section 2100's imposition of utmost duty of care on a common carrier is preempted." MSJ at 15. In fact, the *Gilstrap* Court did not even mention Section 2100 or the "utmost care" standard. As discussed above, *Gilstrap* held that an area of aviation commerce or safety is preempted only if that field is governed by pervasive

federal regulations. 709 F.3d at 1006 (quoting *Martin*, 555 F.3d at 811). If not, state standards apply. Thus, California's utmost care standard may apply to areas of aviation safety the federal government does not pervasively regulate.

As discussed above, this Court finds that the areas of aviation safety at issue in this lawsuit are preempted by federal regulations. Thus, any purported violation section 2100 cannot be used as a basis for invoking negligence per se in this case. Defendant is entitled to summary judgment on this issue.

## VI. CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's remaining claims, Doc. 37. The trial date of December 1, 2015 is vacated. The clerk is ordered to close the case.

IT IS SO ORDERED.

Dated:   **August 10, 2015**          **/s/ Lawrence J. O'Neill**
                                      UNITED STATES DISTRICT JUDGE